[No. 33827.   Department One.   December 5, 1956.]

ALVON LANEGAN, *Appellant*, v. VERNE W. CRAUFORD *et al.*, *Respondents.*[1]

[1]Reported in 304 P. (2d) 953.

*Sweet, Wolf & Merrick* and *Robert M. Elston,* for appellant.

*Cosgrove, Terhune & Schlosstein,* for respondents.

FOSTER, J.—Appellant sued respondents for damages to her person and automobile resulting from an automobile accident at a light-controlled intersection in the city of Seattle. A verdict for fifteen hundred dollars was returned for appellant and thereafter vacated on respondent's motion for judgment n.o.v. In the same order, pursuant to Rule of Pleading, Practice and Procedure 14, 34A Wn. (2d) 78, a new trial was granted without, however, specifying any ground therefor as required by the next to the last paragraph of Rule of Superior Court 16, 34A Wn. (2d) 117, as amended effective July 1, 1954.

The accident occurred at the intersection of north 80th street and Aurora avenue in the city of Seattle. Aurora avenue is seventy-one feet between curbs and a multiple lane highway with three lanes each for both north and

southbound traffic. It is intersected at right angles by north 80th street, which is thirty-two feet in width. This intersection is controlled by conventional signal lights. It is unnecessary to detail the evidence, which is in sharp conflict, other than to say that appellant entered the intersection from the west traveling east and that respondent entered the intersection from the south traveling north. The jury believed that appellant entered the intersection under the protection of the green light, and that her forward progress was interrupted by cars ahead waiting to make a left turn to the north, and that, while her progress through the intersection was thus interrupted, the signal lights changed; that respondent, traveling the northbound third or curb lane, entered the intersection under the protection of the green light controlling north and southbound traffic and collided with appellant's car near the north 80th east pedestrian crosswalk. Thus it is that there is substantial evidence that both cars were rightfully in the intersection.

Appellant assigns error in granting judgment n.o.v.; denying her motion to increase the amount of the verdict; giving instruction No. 9, presently noticed; and refusal to give appellant's requested instruction No. 6 respecting relative rights of the parties.

With commendable candor, appellant's learned counsel states that the only question is whether there is sufficient evidence of respondent's negligence to sustain the verdict.

We are told by respondent both in oral argument and in the printed brief that there was no testimony that the appellant entered the intersection under the protection of the green light for east and west traffic. The same statement was made to the trial court, which provoked the learned trial judge to say that the evidence was to the contrary.[2] We find abundant evidence in the record that appellant did enter the intersection under the protection of the green light. (Appendix A) It may be said that there is strong evidence to the contrary, but this presented a dispute of fact for the jury's determination.

The learned trial judge was of the opinion that the conclusion reached in *Rockey v. Glacier Gravel Co.*, 34 Wn.

(2d) 492, 209 P. (2d) 291, gave the respondent an absolute right of way to cross the intersection when the light turned green, and that he had the right to assume that all others would accord him the right of way, and so charged the jury in instruction No. 9 set out in the margin.[3] Upon that view of the law, the trial court granted the respondent's motion for judgment n.o.v.

We have no occasion to unsay anything said in *Rockey v. Glacier Gravel Co., supra,* but that case must be limited to the facts with which the court was then concerned. There, both cars lawfully entered the intersection under the protection of the green light traveling in opposite directions, but the Heatlox car undertook a left turn directly in the path of the oncoming juggernaut of the Glacier Gravel Company without regard for the rights of the driver of that vehicle. Here, on the other hand, appellant entered the light-controlled intersection from the west and was lawfully in the intersection when her forward progress was blocked by preceding vehicular traffic. She did not attempt to turn directly in the path of an approaching car.

■ A green light is not a command to go, but only a limited permission to pass, having due regard for those already lawfully in the intersection. *Fuss v. Williamson,* 160 Neb. 141, 69 N. W. (2d) 539; *Roland v. Murray,* 239 S. W. (2d) (Ky. App.) 967; *Leeper v. Nelson,* 139 Cal. App. (2d) 65, 293 P. (2d) 111; *Spence v. Carne* (Tenn. App.). 292 S. W. (2d) 438, 452.

■ Vehicles rightfully in a light-controlled intersection have a reasonable opportunity to clear the intersection.

---

[2]"THE COURT: I have it in my notes. I think there is evidence here, putting part of one and part of another together, that the jury could find that the plaintiff entered on the green light."

[3]"You are instructed that if you find from the evidence that the defendant driver had the right of way by virtue of the fact that the light was green when he entered the intersection, then it was lawful and proper for him to synchronize his speed and the traffic light in such a way as to avoid stopping before he reached the intersection.

"Defendant driver had the right to assume that the plaintiff would accord him the right of way to which he was entitled, until such time as he knew or should have known to the contrary."

*Freenman v. Churchill*, 30 Cal. (2d) 453, 183 P. (2d) 4; *Capillon v. Lengsfield*, 171 So. (La. App.) 194; *Leeper v. Nelson, supra;* ·*Styskal v. Brickey*, 158 Neb.· 208, 62 N. W. ·(2d) 854; *Fuss v. Williamson, supra*.

. Such is the imperative command of the statute, Laws of 1951, chapter 56, § 3, p. 165 (RCW 46.60.230). .

"But vehicular traffic, including vehicles turning right or left, shall yield the right of way to other vehicles and to pedestrians lawfully within the intersection or an adjacent cross walk at the time such signal is exhibited."

Indeed, this court has held that a pedestrian so entering a light-controlled intersection has the right to complete the crossing after the signal has changed. *Brunner v. John*, 45 Wn. (2d) 341, 274 P. (2d) 581; *Orme v. Watkins*, 44 Wn. (2d) 325, 267 P. (2d) 681; *Fedland v. Teshera*, 40 Wn. (2d) 256, 242 P. (2d) 751.

The statute makes no distinction between the rights of motorists and pedestrians rightfully in a light-controlled intersection to complete the crossing after a change in the signal, nor do we perceive any reason for such a distinction.

· ■  The court was asked to charge the jury in appellant's requested instruction No. 6 that, regardless of the fact that the defendant (respondent) entered the intersection under the protection of the green light, he was under a duty to observe traffic conditions, and that failure to observe existing conditions and take necessary precautions would be negligence. This was a correct statement of the law, and the refusal to give it or one similar was reversible error.

There remains the assignment of error in refusing to increase the amount of the verdict. The jury found respondent liable but awarded only fifteen hundred dollars damages. Respondent alone moved for a new trial, while appellant moved to increase the amount of the verdict.

■■  Rule of Superior Court 16 (5), 34A Wn. (2d) 117, and Laws of 1933, chapter 138, § 2, p. 482 [*cf.* RCW 4.76-.030], authorize the conditional granting of a new trial if the trial court finds that the amount of the verdict is either so large or so small as to indicate "passion or prejudice,"

and upon appeal the statute provides that the amount of the verdict is presumed to be correct unless this court finds from the record that the amount of the verdict was so excessive or inadequate as unmistakably to indicate "passion or prejudice." Such are the recent decisions. *Orme v. Watkins, supra; Anderson v. Dalton,* 40 Wn. (2d) 894, 246 P. (2d) 853, 35 A. L. R. (2d) 302; *Olson v. Weitz,* 37 Wn. (2d) 70, 221 P. (2d) 537; *Sunset Oil Co. v. Vertner,* 34 Wn. (2d) 268, 208 P. (2d) 906; *Randall v. Tradewell Stores,* 21 Wn. (2d) 742, 153 P. (2d) 286; *Nagle v. Powell,* 5 Wn. (2d) 215, 105 P. (2d) 1.

In the accident, appellant was thrown against the steering wheel, ruptured a muscle in her right elbow, and stretched the triceps tendon, resulting in three fourths of an inch of play in the forearm, and injured the ulnar nerve which required surgery. Moreover, she sustained a low back injury which an orthopedic specialist characterized as a "traumatic lumbosacral syndrome."

For approximately a year following the accident, she was attended by her physician several times a week. While the elbow injury was extremely painful and resulted in swelling and discoloration and impairment of motion, the disability, nevertheless, persisted after a year's conservative treatment, and on October 14, 1955, just three days short of a year, appellant consulted a specialist, who diagnosed an ulnar nerve injury with a resultant hyperhypesthesia of the ulnar nerve distribution; that is, a lack of sensitivity over the area supplied by that nerve. She had loss of power in the hand. Such injuries can only be relieved by surgery.

The tendon was surgically shortened to eliminate the play, and the ulnar nerve explored and found to be bound down by adhesions, necessitating its transplantation from the natural to an exposed position which renders it more susceptible to injury. Six days' hospitalization was required. The arm was placed in a half cast. Appellant was house confined for a period of six weeks following the operation.

Appellant forthrightly concedes that the results of the operation were phenomenal, resulting in almost complete recovery.

■ There is no serious controversy respecting the special damage. The medical expenses of $890.25 were proved beyond cavil, and the damage to the car of $228.49 is undisputed. As in *Ide v. Stoltenow*, 47 Wn. (2d) 847, 289 P. (2d) 1007, the items of special damage seem to be beyond the field of legitimate controversy. It seems reasonably clear, therefore, that only $381 was awarded for the pain and suffering, the year's temporary partial disability, and the hospitalization and ensuing house confinement. In comparison with other verdicts for similar injuries, $381 for general damages is so small as to shock one's idea of fair play. We are, therefore, of the opinion that the verdict was so inadequate as to call for relief.

We are told by the appellant that six thousand dollars would be an adequate amount, but this court has no facilities for such determination. A new trial must be ordered for the purpose of fixing the amount of the appellant's damages.

■ Upon instructions less favorable to the appellant than she was entitled to, the jury resolved the issue of liability in her favor. There seems to be no reason, therefore, to require a retrial on the issue of liability. *Winslow v. Mell*, 48 Wn. (2d) 581, 295 P. (2d) 319; *Owens v. Scott Publishing Co.*, 46 Wn. (2d) 666, 284 P. (2d) 296; *Fleming v. Seattle*, 45 Wn. (2d) 477, 275 P. (2d) 904; *McUne v. Fuqua*, 42 Wn. (2d) 65, 253 P. (2d) 632.

The judgment notwithstanding the verdict is reversed, and the cause is remanded with directions to enter judgment fixing liability on the respondent and for a new trial upon the issue of damages only.

DONWORTH, C. J., SCHWELLENBACH, FINLEY, and ROSELLINI, JJ., concur.

APPENDIX A

Witness: Alvon Lanegan

Q. When did you again look at the light? A. I was about

the middle of the crosswalk when I was possibly at the lowest of the time when my car was stopping for that jolt, I looked up and I saw the light was green. (S. F. 15)

Q. (By Mr. Schlosstein) Now, as you drove on down the hill, this car, of course, hasn't anything to do with it (indicating), but where were you in reference to this car, then, when you again looked at the light? A. I was in the middle of the crosswalk. (S. F. 42, 43)

A. I remember telling him how I entered the intersection, I entered on the green light. I remember telling him that, and I remember telling him that I was held up in the center of the intersection. (S. F. 53)

Q. You don't actually say that you entered with the green light, do you? You don't mean to tell us that? A. Yes, sir, I do. (S. F. 53)

A. Yes, because when I saw the light was green I went directly on in and through the intersection. (S. F. 55)

Witness: Emma Morgan

A. Our light was red. Q. Red? A. That is right. Q. Now, did you notice if the Hudson made any halts or hesitations as it entered Aurora Avenue? A. The first time I noticed the car it was in the center of Aurora and we were still, — Q. In the center of Aurora? A. That is right. In the center directly in front of the cars going north and it was stopped there. Q. I see. A. And we still had the red light because we were still waiting to go. Q. Still waiting to go south? A. That is right. (S. F. 63)

Witness: Harold Morgan

Q. Now, can you tell me the condition of the light as the car was stopped there, the condition of your light? A. Our light was red. (S. F. 69)

Witness: Eli Rodosovich

A. She stated that she was eastbound on North 80th, and that she had the light with her. (S. F. 89)

May 9, 1957. Petition for rehearing denied.