[No. 38865.    Department Two.    May 11, 1967.]

MARIE DAHL, *Individually and as Executrix, Appellant,* v. MIKE KLAMPHER *et al., Respondents.**

*Lawrence S. Cleman,* for appellant.

*Dano, Cone & Fraser,* by *H. K. Dano,* for respondent.

*Reported in 427 P.2d 709.

204

DONWORTH, J.—This is an appeal from the dismissal of appellant's case at the close of all the evidence in an action for injuries and wrongful death. Appellant, the widow of the decedent, Niels Dahl, instituted this action individually and as executrix of the estate against respondent. For purposes of this opinion the term respondent will be used to refer only to respondent husband. The trial was commenced before a jury on November 17, 1965.

Mr. Dahl died as the result of injuries sustained when he was knocked down and run over by respondent's automobile when he was allegedly a pedestrian in a crosswalk. Respondent had stopped his car for a red traffic control light at an intersection and was executing a right-hand turn at a speed of 2 or 3 miles per hour when he struck the decedent.

The trial court, in the formal order of dismissal, ruled that, as a matter of law, the evidence did not warrant a verdict for appellant and, further, that the decedent was guilty of contributory negligence as a matter of law. A motion for a new trial was later made and denied. On these rulings of the trial court, appellant has based his five assignments of error.

A distinguishing characteristic of this case is the dearth of evidence as to exactly what did happen. None of the several witnesses who testified at the trial saw the decedent at any time prior to the time of contact between his body and respondent's 1954 Cadillac automobile. Hence, there is no direct testimony or evidence as to the direction in which Mr. Dahl was walking, or precisely where he was immediately prior to the accident.

Respondent husband, who was driving the car, described the accident as follows:

Q. As I understand it, Mike, the first time you observed this man was in the north and south crosswalk? A. Yes. Q. Where was he when you first observed him? A. He just come out of no place. Like, stepped right in front of my front fender. I didn't know where he come from or anything. Q. That was the first time you saw him? A. Yeah. Q. What did you do from there on out, Mike? A. I stopped as soon as I could.

The following facts are not in substantial dispute.

The accident occurred at approximately 1:15 p.m. on November 2, 1964, in downtown Ellensburg, at the intersection of Pearl Street, which runs north and south, and 4th Street, which runs east and west. The distance between curbs on both streets is 48 feet. There are four marked pedestrian crossings, each approximately 8½ feet wide—one on the east side of, and parallel to, Pearl Street, running north and south, and one on the west side of Pearl Street; one on the north side of, and running parallel to, 4th Street, running east and west, and one on the south side of 4th. Three feet before approaching traffic would reach each of these pedestrian crosswalks, there is a marked stop line for cars.

The intersection is controlled by traffic lights which are set for 26 seconds on green, 4 seconds on yellow, and 30 seconds on red.

There was evidence that respondent, a 79-year old blacksmith, was traveling south on Pearl Street. When his car was about 150 feet from this intersection, he noted that the light for north-south traffic on Pearl Street was red. He came to a full stop, paused momentarily, and then proceeded around the corner to the right and into the first parking stall on the north side of 4th Street. As he rounded the corner and passed across the west pedestrian crosswalk (which ran north and south across 4th Street), his automobile passed over the body of Mr. Dahl. Mr. Dahl, who was 76 years old at the time of the accident, died 1 month later, on December 3, 1964, as a result of the injuries sustained in this mishap.

Immediately following the passage of respondent's automobile over Mr. Dahl, the body was lying in the north-south crosswalk about 6 to 8 feet from the northwest curb, and about 2 feet from the eastern line of the 8½-foot-wide north-south crosswalk. The evidence that the light for north-south foot traffic was red at the time of contact is not disputed.

The trial court, in granting respondent's motion for dismissal, orally stated:

Well, Gentlemen, it seems to me that there is no scintilla, that I can see, of evidence of proof here that would excuse the defendant[1] for being in this crosswalk. The only evidence we have is that he was in it. Nobody says he wasn't in this crosslane.

■ This court has held that, in reviewing a trial court's ruling that a plaintiff was guilty of contributory negligence as a matter of law, we must accept as true that view of the evidence most favorable to plaintiff. *Baxter v. Greyhound Corp.*, 65 Wn.2d 421, 397 P.2d 857 (1964).

Appellant proposes three rather engaging theories under which decedent might have been lawfully in the intersection under these circumstances. We need discuss only one.

Appellant argues that the decedent may have entered the crosswalk from the south side of Pearl Street at a time when the light was green, and that the light changed to red during the decedent's progress across the lane. He points out that this court has held that a person entering a crosswalk upon a favorable light, may lawfully continue until he completes his crossing even though the light may change to red in the interim. *Lanegan v. Crauford*, 49 Wn.2d 562, 304 P.2d 953 (1956); *Fedland v. Teshera*, 40 Wn.2d 256, 242 P.2d 751 (1952). This argument, if supported by evidence or reasonable inference therefrom, raises a factual issue as to whether decedent *entered* the crosswalk at a time when the light was green.

In support of his theory, appellant introduced evidence showing that decedent had purchased some drugs from a store located on Pearl Street three quarters of a block to the south of 4th Street just minutes before the accident occurred. The drugs were found in the pocket of the decedent following the accident. Appellant argues that it is reasonable to infer that decedent was returning from the drugstore to his automobile, which was parked on the north

---

[1]The trial court's reference here to "defendant" is rather confusing. The ruling was that the decedent was in the crosswalk unlawfully, and hence was guilty of contributory negligence as a matter of law. We feel, as respondent argued before this court, that the trial court meant the decedent rather than the defendant in the statement quoted.

side of 4th Street to the east of the intersection, and would, therefore, be crossing 4th Street in a northerly direction. Since he was struck by respondent's automobile within about 6 to 8 feet of the northwest curb, he would have walked a distance of approximately 42 feet after entering the crosswalk before he was struck.

A witness, Mamie Westphall, who was standing on that northwest curb awaiting a green light so she could proceed south across 4th, testified that:

> [F]irst thing I noticed a car came around the corner there and I noticed it raised up on the left side twice and I thought, "what in the world is wrong" and he pulled into this parking space and he stopped and I looked up and there was a man laying in the street and *the light changed and I started across the street then.* (Italics ours.)

It would thus appear that the light changed to green for north-south traffic *after* respondent's car pulled into the parking stall. At an estimated 2 miles per hour, it would have taken respondent's car approximately 8 seconds to reach the parking stall from the point of impact. Deducting this 8 seconds from the time that must have elapsed since the last green light (4 seconds on yellow and 30 seconds on red), it follows that, to have entered the crosswalk lawfully, decedent must have entered the crosswalk more than 26 seconds previous to impact. It would seem plausible that a man of 76 would walk no more than 42 feet in 26 seconds. We do not find appellant's theory in the least unreasonable.[2]

Respondent opposes this theory first on the ground that there is no direct evidence as to the direction in which decedent was traveling across the crosswalk. While this is true, from the facts that decedent's car was parked north of

---

[2]We further note that Mamie Westphall, standing on the northwest curb, testified that she did not see decedent prior to the time the automobile passed over his body. Witnesses standing on the southwest curb, also waiting for a green light, testified that they did not see decedent before he was struck by respondent's auto. The testimony is thus consistent with appellant's theory that the decedent departed from the southwest corner before the witnesses arrived there (*i.e.* while the light was still green) and had not arrived at the northwest corner prior to the accident.

the point of impact, and that he had made a purchase in a drugstore south of the point of impact just a few minutes before, the jury could reasonably infer that decedent was traveling in a northerly direction.

A second ground for opposing appellant's theory is based on the position of the body of decedent after the accident. His head was pointing south, and his feet pointed north, thus indicating, according to respondent's argument, that he was traveling south when he was struck. If he had been traveling south, of course, it would strongly indicate that he had entered the crosswalk against a red light since he was struck just 6 feet from the north curb.

But we find nothing in the position of the body *after* decedent had been struck by respondent's automobile to logically demonstrate the direction decedent had been traveling *before* he was struck or confronted by the oncoming automobile.

■ This court, in *McQuillan v. Seattle*, 10 Wash. 464, 465, 38 Pac. 1119 (1895), set forth the applicable rule, providing that:

> Generally the question of contributory negligence is for the jury to determine from all the facts and circumstances of the particular case, and it is only in rare cases that the court is justified in withdrawing it from the jury. [Citing cases.]
>
> There are two classes of cases in which the question of negligence may be determined by the court as a conclusion of law . . . . The first is where the circumstances of the case are such that the standard of duty is fixed, and the measure of duty defined, by law, and is the same under all circumstances. [Citing case.] And the second is where the facts are undisputed and but one reasonable inference can be drawn from them. [Citing authorities.] If different results might be honestly reached by different minds then negligence is not a question of law, but one of fact for the jury. [Citing case.]

In view of the foregoing discussion, it cannot be said that the evidence, along with reasonable inferences to be drawn therefrom, is of such a nature that reasonable minds could not differ as to the conclusions to be reached. The case

presents, therefore, on the issue of contributory negligence of the decedent, not a question of law for the court, but a question of fact for the jury. It was error to rule that, as a matter of law, decedent was guilty of contributory negligence.

However, there remains to be considered the trial court's alternate ground for dismissing the action, to wit, that there was insufficient evidence of primary negligence for the case to go to the jury.

First, we note that, in respondent's pretrial deposition, which was read into evidence at the trial, he testified as follows:

Q. Now, say again, where was Chris Dahl when you first saw him?

A. When I saw him he was laying in front of my car.

Q. Before you passed over him?

A. I didn't pass over him.

Q. Oh. I see. As I understand you Mike then, your version of it is that your car never did pass over Chris Dahl?

A. That I am positive of.

However, a number of witnesses to the accident testified that they had seen the automobile actually pass over the body of the decedent. This issue of fact was for the jury to decide.

Secondly, we note that RCW 46.60.230 provides, in part, that:

Vehicular traffic facing the [red] signal . . . may, after stopping, *cautiously proceed* to make a right turn . . . but vehicular traffic making such turns *shall yield the right of way* to other vehicles and *to pedestrians lawfully within the intersection or an adjacent crosswalk at the time* such signal is exhibited. (Italics ours.)

As we have heretofore stated, the evidence is such that the trial court was in error in ruling that, as a matter of law, decedent was not lawfully within the adjacent crosswalk at the time respondent made his right-hand turn through the red light. If the jury were to find, as a fact, that

decedent was lawfully within the crosswalk, it could find, as well, that respondent was negligent in failing to proceed with the requisite degree of caution and to yield the right of way as required by the statute cited above.

In *Kemalyan v. Henderson*, 45 Wn.2d 693, 697, 277 P.2d 372 (1954), this court stated that:

> [I]n ruling upon a challenge to the sufficiency of the evidence, . . . no element of discretion is involved, and the trial court can grant such motions only when it can be held as a matter of law that there is no evidence nor reasonable inference from evidence to sustain the verdict. *Williams v. Hofer*, 30 Wn. (2d) 253, 191 P. (2d) 306.

We do not intend to intimate that, on a retrial of this case, the trial court or the jury must accept as verities the theory or the evidence discussed in this opinion as urged by appellant. They are discussed solely for the purpose of illustrating that there is, in this case, "evidence" or "reasonable inference from evidence," which, if believed by the jury, would sustain a verdict for appellant.

The trial court's order of dismissal is reversed and the cause is remanded for a new trial on all issues.

FINLEY, C. J., HUNTER, J., and LANGENBACH, J. Pro. Tem., concur.