[No. 39163.    Department Two.    January 25, 1968.]

Thomas John Byrnes, *Respondent*, v. Joseph
Andrews *et al.*, *Appellants.**

*Ferguson & Burdell*, by *W. Wesselhoeft* and *G. E. Craig
Doup*e, for appellants.

*Wolfstone & Panchot* and *Lewis S. Armstrong*, for respondent.

Hamilton, J.—This appeal emanates from a suit by respondent (plaintiff) seeking damages for injuries suffered in an intersection collision between his compact automobile (a MGA convertible) and one (a Volkswagen) driven by appellant (defendant). The cause was tried to a jury and resulted in a verdict and judgment favorable to respondent. Appellant, assigning error to one instruction, seeks a new trial.

The collision occurred April 30, 1962, between 7:30 and 8 a.m., at the intersection of East Marginal Way (U.S. Highway 99) and an access road leading to the Boeing Development Center in Seattle, Washington. East Marginal Way, in the vicinity of the intersection is a 5-lane roadway, with

*Reported in 436 P.2d 467.

three southbound and two northbound lanes. The access road parallels the east side of East Marginal Way for a distance, then sharply curves westerly into and across the highway at right angles. Traffic, which is normally heavy at the time of day involved, is controlled at the intersection by a standard stop and go signal light, with a variable time interval between light changes depending upon the amount of traffic upon the access road. At the time in question, the sequence for traffic crossing the highway was a minimum of 12 seconds on the green light, which was extended to 17 seconds if such variation was actuated by a traffic pad located in the access road. The light then would change from green to yellow for 4 seconds before turning red.

On the morning in question, appellant had entered upon the access road and was moving with a line of traffic towards the crossing and his employment at the Boeing Development Center. He made at least one stop with the traffic awaiting a light change when some 20 to 30 car lengths back from the intersection. His next stop for a light change occurred when his vehicle was from three to five cars east of the intersection. When the light he was facing turned green, he moved with the traffic, slowing down for a rough area in the access road immediately east of the easterly intersection line. With his attention diverted by the task of negotiating the bumpy area, appellant did not observe the color of the signal light at the instant he entered the intersection, although he stated it was still green when he was but one and one half to two car lengths east of the intersection boundary and usually remained green long enough to permit upwards of 20 cars to pass through.

A passenger in appellant's car testified the light was green at the moment the vehicle crossed the easterly line of the intersection, but that it then turned yellow and switched to red without the usual 4 second time interval. The passenger quickly called appellant's attention to the color of the light. Both appellant and his passenger testified that appellant's vehicle was crossing the midway line between the two northbound lanes of East Marginal Way when the light turned red.

When the light turned green for north and southbound traffic on East Marginal Way, the two lead vehicles in the easterly (inner) and middle southbound lanes commenced moving forward. According to appellant and his passenger they then stopped or slowed down sufficiently to permit him to pass in front of them. As appellant crossed the center line of the highway preparatory to proceeding through the intersection in front of the stopped southbound vehicles, he noticed respondent's vehicle in the most westerly (outer) southbound lane commencing to move forward slowly and slightly behind the two vehicles in the middle and inner lanes. Believing it would stop, as had the other two vehicles, appellant continued on.

Respondent, in the outer southbound lane, testified he started forward after he observed the green light and the vehicle in the middle lane commenced to move. He stated he did not observe the vehicle next to him slow down or stop, and, further, that his view of appellant's vehicle was blocked by the car next to him—it being a standard size automobile. Continuing to move into the intersection, respondent asserts he was suddenly confronted with appellant's vehicle crossing his path and was unable to avoid striking it broadside.

In assessing the respective allegations of negligence and contributory negligence, the jury, in substance, was instructed (1) that neither driver could rely solely upon a right of way or a traffic signal as granting an absolute right to proceed, and that both had the duty to exercise reasonable care (instruction No. 7); (2) that if appellant entered the intersection on a red light he was negligent as a matter of law (instruction No. 10); (3) that if appellant entered the intersection upon a green light, which turned red while he was in the intersection, and that thereafter respondent entered the intersection on his green light, both drivers were then lawfully within the intersection and were respectively required to exercise reasonable care and yield the right of way to other vehicles lawfully within the intersection, although each had a right to a reasonable opportunity to clear the intersection (instruction No. 8); and (4) that if

the light turned amber [yellow] before defendant Andrews [appellant] entered the intersection, . . . it was negligence for him to proceed, unless . . . at said point of entry to the intersection . . . defendant Andrews could not have made a stop in safety and therefore proceeded through the intersection on the amber [yellow] light, . . . he was lawfully in the intersection but under a duty to proceed with caution, and *he is required to use reasonable care to yield the right of way to vehicles lawfully within the intersection* and is entitled to a reasonable opportunity to clear the intersection. (Italics ours.) Instruction No. 9.

The only assignment of error to the instructions referred to above relates to the italicized portion of instruction No. 9. Appellant contends that this portion of that instruction is erroneous and prejudicial in that (a) it is at odds with the pertinent statute then in effect, and (b) it extended to respondent a right of way which, under the statute and the facts of the case, he did not have.

Respondent, on the other hand, argues that the instruction (1) correctly states the rule under the facts of the case; (2) was more favorable than prejudicial to appellant, since there was no evidentiary basis upon which the jury could have found that appellant lawfully entered the intersection upon the yellow light; and (3) any error in the instruction was cured by the other instructions.

We are satisfied from a review of the record, the statute involved, and our prior decisions that instruction No. 9, as given, is erroneous and prejudicial.

There was ample direct and circumstantial evidence presented from which the jury could have found that appellant, under all the circumstances, lawfully entered the intersection upon either a green or yellow light, and was therefore rightfully within the intersection at the time the light turned red for appellant and green for respondent. The duties of the respective drivers under these circumstances is set forth in RCW 46.60.230, as it read and governed the situation at the time of the accident.[1] That section, in pertinent part, provided:

---

[1] RCW 46.60.230 was repealed in 1965 and replaced, with some changes, by RCW 46.61.055 and RCW 46.61.065.

Whenever, at any point, traffic is controlled by traffic control signals or signs exhibiting the words "Go," "Caution," or "Stop" or exhibiting different colored lights successively, one at a time, or with arrows, said lights, arrows and terms shall indicate and apply to drivers of vehicles and pedestrians as follows:

Green or the word "Go": Vehicular traffic facing the signal except when prohibited by a superior regulation, may proceed straight through or turn right or left unless a sign at such place prohibits either such turn. *But vehicular traffic,* including vehicles turning right or left, *shall yield the right of way to other vehicles* and to pedestrians *lawfully within the intersection* or an adjacent crosswalk *at the time such signal is exhibited.* . . .

Yellow alone or the word "Caution" when shown following the Green or "Go" signal: Vehicular traffic facing the signal shall stop before entering the nearest crosswalk at the intersection or at such other point as may be designated by the proper traffic authority. *However, if such stop cannot be made in safety, a vehicle may be driven cautiously through the intersection.* (Italics ours.)

■ It is thus revealed, under the statute in effect at the time, that if appellant was rightfully within the intersection at the instant the light turned green for respondent, the right rested with appellant *to proceed cautiously through the intersection* and the obligation fell *upon respondent to yield the right of way so as to permit appellant to clear the intersection.*

Under the facts of the case, the challenged portion of instruction No. 9, when read alone or in conjunction with the other instructions, obscured and/or misplaced the obligation to yield the right of way when it implied that respondent may have acquired a superior right to proceed into and through the intersection despite the fact that appellant was already there, accompanied by the right to proceed cautiously through the intersection. In short, the pertinent portion of the instruction did not correctly recite the rule laid down by the statute nor allow for its application to the circumstances revealed by the evidence. Appellant was, therefore, deprived of a valid theory of the case.

A somewhat analogous situation was presented to this court in *Lanegan v. Crawford,* 49 Wn.2d 562, 304 P.2d 953

(1956). In passing upon an instruction granting a driver in respondent's position the right to proceed into an intersection assuming that all others would accord him the right of way, we said, at 565:

A green light is not a command to go, but only a limited permission to pass, having due regard for those already lawfully in the intersection. [Citing cases.]

Vehicles rightfully in a light-controlled intersection have a reasonable opportunity to clear the intersection. [Citing cases.]

Such is the imperative command of the statute, Laws of 1951, chapter 56, § 3, p. 165 (RCW 46.60.230).

"But vehicular traffic, including vehicles turning right or left, shall yield the right of way to other vehicles and to pedestrians lawfully within the intersection or an adjacent cross walk at the time such signal is exhibited."

Indeed, this court has held that a pedestrian so entering a light-controlled intersection has the right to complete the crossing after the signal has changed. *Brunner v. John*, 45 Wn. (2d) 341, 274 P. (2d) 581; *Orme v. Watkins*, 44 Wn. (2d) 325, 267 P. (2d) 681; *Fedland v. Teshera*, 40 Wn. (2d) 256, 242 P. (2d) 751.

The statute makes no distinction between the rights of motorists and pedestrians rightfully in a light-controlled intersection to complete the crossing after a change in the signal, nor do we perceive any reason for such a distinction.

*Cf., also, Dahl v. Klampher*, 71 Wn.2d 203, 427 P.2d 709 (1967).

Appellant is entitled to a new trial, and it is so ordered. Costs will abide the result of the new trial.

HILL and NEILL, JJ., and OTT, J. Pro Tem., concur.