[No. 41295.    Department Two.    June 11, 1970.]

BERNARD SHASKY et al., Appellants, v. JOHN DOE BURDEN et al., Respondents.*

*Reported in 470 P.2d 544.

McCrea, Kafer, Gissberg & Wilson and Michael R. Donovan, for appellants.

Anderson, Hunter, Carlson & Dewell, by William A. Baker, for respondents.

HALE, J.—While crossing a main street in a marked, signal-controlled crosswalk, plaintiff Catherine Shasky was struck and injured by defendants' automobile. The jury returned a general verdict in favor of the defendant driver and plaintiffs appeal the judgment entered upon it. Plaintiffs assign error to instructions given and refused, to submitting the issue of contributory negligence to the jury, and to the court's refusal to direct a verdict in their favor.

Broadway, at its intersection with 19th in Everett, was a heavily traveled main street running north and south through a business or commercial district with a 35 miles per hour speed limit. It had two traffic lanes for northbound traffic, two for southbound traffic and a parking lane on either side. Signal lights controlled vehicular traffic at the 19th Street intersection and on Broadway. Marked pedestrian crosswalks controlled by signal lights flashing the "Walk" and "Wait" legends crossed both Broadway and 19th Streets.

It was very dark and raining when the accident happened at about 6 p.m., December 2, 1967. Mrs. Shasky, dressed in dark clothing, was walking east across Broadway in the northerly crosswalk at 19th. She had crossed the two southbound and the first northbound lanes when she was struck by the right front bumper of defendants' car as

it traversed the crosswalk while traveling north in the easterly or outside lane.

■■ Plaintiffs assign error to the court's submitting the issue of contributory negligence to the jury and to the refusal of a directed verdict. A decision on either of these related assignments depends largely on the evidence, for if there is substantial competent evidence to support an issue, it must be submitted to the jury. Contributory negligence cannot be withdrawn from the jury or a verdict directed for the plaintiff where there is substantial evidence to support either the issue of contributory negligence or want of negligence. *Dahl v. Klampher,* 71 Wn.2d 203, 427 P.2d 709 (1967); *Poston v. Mathers,* 77 Wn.2d 329, 462 P.2d 222 (1969). Thus, before the contributory negligence issue can be properly taken from the jury, the record must be such that reasonable minds would agree that Mrs. Shasky had exercised the degree of care which a reasonably prudent person would have exercised for her own safety under the circumstances, and that her actions were, as a matter of law, free of negligence. The trial court may withdraw an issue of fact from the jury only where it can properly say as a matter of law that there has been no substantial evidence to support it. *Carrieri v. Bush,* 69 Wn.2d 536, 419 P.2d 132 (1966).

The record, we think, contains substantial evidence from which the jury could infer contributory negligence and could find defendants free of actionable negligence, too. The defendant driver testified that she was driving north on Broadway at 20 to 25 miles per hour in the outside northbound lane. When her car was about one-quarter block from the 19th Street intersection, she observed that the traffic control light facing her was green; she watched it as she approached and it remained green as her car entered the intersection. Lighting conditions at the crosswalk were poor, she said. There was no vehicle directly in front of her when her car was about to traverse the north crosswalk but vehicular traffic was moving south in the two southbound lanes on Broadway. She saw no one in or entering the north crosswalk until the front of her vehicle

was 4 or 5 feet from it, and then she suddenly caught a glimpse of Catherine Shasky passing in front of her car. She slammed on her brakes but her car struck plaintiff and stopped within the crosswalk. Describing her first glimpse of plaintiff, defendant driver testified, "Yes, she was running—she was walking, I would say, moderately fast. . . . She wasn't looking, she had her head turned the other way, turned to the north."

Linda Burden, daughter of the defendant, then 15 years old, was riding in the front seat of the car that evening. She said that, when their car was about one-half block from the 19th Street intersection, she looked at the traffic signal light facing them and saw that it was green. She first saw Mrs. Shasky in the crosswalk when plaintiff was 4 or 5 feet from their car and a little to the left of it, and yelled a warning at about the same instant that her mother slammed on the brakes. Thus, according to both the defendant driver and her daughter, the traffic light facing them and controlling their northbound car was green when they were between one-half block and one-quarter block away from it.

Another witness, 14-year-old John Martinis, a bystander, heard the accident and saw that the traffic signal light facing the defendant driver was green. Just before the impact, he was standing on an 8-foot ladder at the southeast corner of the intersection removing a sign from a billboard when he heard the sound of a minor collision—not the one involved in this case. He started across the street to see what had happened in that accident and, while crossing 19th, saw the Burden car run into Mrs. Shasky. He said he saw the right front end of defendants' car strike plaintiff while she was in the crosswalk. In the time it took him to run across 19th from the southeast to the northeast corner of the intersection to the place of impact, the light stayed green—the same green signal interval on which the Burden car had gone through the intersection. After he had reached the place of impact, he saw the light change from green to yellow to red. Vehicular traffic on Broadway was

very heavy, he said, and that it was raining and the intersection dark.

In deciding whether to submit the issue of contributory negligence and in ruling on a motion for a directed verdict, the court had to consider all of the evidence. Catherine M. Shasky, plaintiff, testified that she was carrying a sandwich and a container of coffee to a friend of hers in a business establishment on the east side of Broadway a few doors north of the 19th Street intersection. She waited, she said, at the northwest corner of the intersection at the crosswalk until the pedestrian control signal gave her the green "Walk" signal. She entered the crosswalk with the green "Walk" signal, walking easterly, but defendants' car struck her after she had passed the center of the street in the crosswalk. Vehicular traffic, both north and southbound on Broadway, she said, was stopped at the intersection when she stepped into the crosswalk. It was raining very hard at the time, and traffic was heavy.

On cross-examination, she said that, after she had started across Broadway in the crosswalk on the "Walk" signal, the pedestrian control signal facing her changed from "Walk" to "Wait." She said that she was about half way across Broadway when this signal changed, and that it was on "Wait" when the Burden car struck her. She could not remember whether, as she approached the center of the street, she looked to her right for oncoming northbound traffic, and said she did not see the Burden car before it struck her.

The record thus contained evidence from which the jury could find that the north-south traffic control signal facing the Burden car had been green for a substantial period of time before the car entered the intersection and was green at the time of impact. Although plaintiff said she entered the crosswalk with the "Walk" signal, there was evidence from which the jury could infer under all of the circumstances—the long duration of the green light, and the change of pedestrian signals from "Walk" to "Wait" when plaintiff was about half way across Broadway—that plaintiff had not started with a "Walk" signal but rather against

a "Wait" signal. There was evidence, too, that she walked rapidly with her head turned away from oncoming traffic and made no attempt whatever to see if any vehicles were approaching the crosswalk on that dark, rainy night.

In view of all of the circumstances shown, and despite the very strong protection afforded pedestrians by the marked crosswalk and traffic signals, there was substantial evidence requiring the court to submit to the jury the issue of plaintiffs' contributory negligence and defendants' negligence and which precluded, as a matter of law, a directed plaintiffs' verdict. That the court may have reached a different result as to the facts would not warrant it taking the case from the jury or deciding the issues of negligence and contributory negligence as a matter of law.

Plaintiffs assign error to instruction No. 8. This instruction, we think, correctly stated that a pedestrian who has entered a crosswalk with the green light or "Walk" signal acquires a right-of-way over oncoming automobiles, which may also have a green light, and that the pedestrian's right-of-way continues until he reaches the opposite side of the street. That instruction was correct, too, in saying that a motorist with a green light in his favor acquires a right-of-way over pedestrians who enter a light-controlled intersection crosswalk in violation of a traffic signal, for it set forth a qualifying caveat that the driver's right-of-way stays with him only until he sees, or in the exercise of reasonable care should have seen, that the pedestrian is failing to yield the right-of-way. Plaintiffs' major challenge to instruction No. 8 is directed to that segment of it which says, in effect, that the right-of-way is not absolute but relative, and that the duty to avoid collisions rests on both parties with the primary duty on the party not having the right-of-way. Although the instruction may well have been organized differently, and expressed in different language, and probably could be improved for incorporation into the pattern jury instructions applicable to pedestrian accidents at controlled intersections, we think that, when taken in conjunction with the other instructions, it generally expressed the law and did not constitute error.

Plaintiffs assign error to instruction No. 10, which in statutory language sets forth the rules governing both pedestrians and vehicular traffic with respect to traffic signal control lights. This instruction, employing the phraseology of RCW 46.61.055 - .060, told the jury that a pedestrian entering a crosswalk with a "Walk" signal has the right-of-way and that he proceeds with the right-of-way until he reaches a sidewalk or a safety island even if the "Don't Walk" or "Wait" signal intervenes. It also told the jury that vehicular traffic, even with a green light in its favor, had to yield the right-of-way to pedestrians lawfully within the crosswalk, despite the vehicular green light. It correctly informed the jury as to the respective rights, duties and immunities of vehicle operators and pedestrians when traversing through and along pedestrian crosswalks at signal-controlled intersections. When regarded singly, we find it to have been a correct statement of the applicable law.

Instructions, however, are not to be read singly but rather in conjunction with all other instructions, and taking the instructions as a whole shows no error, either. When read together, instructions 8, 9 and 10 appear appropriate to the evidence. Instruction No. 9 stated that the maximum speed was 35 miles per hour, but that the speed must be reasonable and prudent under the conditions then prevailing. It particularly advised the jury, *inter alia,* that one should drive at no more than an appropriate speed under the circumstances when special lights exist with respect "to pedestrians or other traffic or by reason of weather or highway conditions." Plaintiffs' requested instructions, we think, were either fully covered in the court's instructions as given or were not warranted by the evidence.

This court recognizes that the right-of-way protection afforded pedestrians in a marked crosswalk is an exceedingly strong one and that a pedestrian in a marked crosswalk has a right to rely on this protection and to assume that automobile drivers will respect it. *Lubliner v. Ruge,* 21 Wn.2d 881, 153 P.2d 694 (1944); *Lanegan v. Crau-*

*ford,* 49 Wn.2d 562, 304 P.2d 953 (1956); *Byrnes v. Andrews,* 73 Wn.2d 108, 436 P.2d 467 (1968).

In *Oberlander v. Cox,* 75 Wn.2d 189, 449 P.2d 388 (1969), we emphasized the strength of the protection which the crosswalk gives to pedestrians, stating that "when an automobile strikes a pedestrian in a crosswalk the driver's burden is a heavy one if he would exonerate himself." We noted in that case that the law placed on a driver approaching a pedestrian crosswalk a continuous burden of observation. We have never extended the protective rule to a point where the crosswalk is a complete and absolute sanctuary. The law does not place on the motorist an impossible burden. Strong as the protection afforded by the crosswalk may be and however unlikely that a pedestrian struck in a crosswalk would be contributorially negligent, there nevertheless remains in the law a legal possibility that a pedestrian, after having passed the center point of the intersection and struck by a vehicle while in a marked crosswalk, may have been contributorially negligent. If there is evidence to support the issue, the court must submit the issue of contributory negligence to the jury. *Oberlander v. Cox, supra.*

Affirmed.

HUNTER, C. J., ROSELLINI and NEILL, JJ., concur.