[No. 38800-2-I. Division One. February 17, 1998.]

RICHARD PUDMAROFF, *Respondent*, v. LEONA ALLEN, ET AL., *Appellants*.

---

*William R. Hickman* and *Pamela A. Okano* of *Reed Mc-Clure*, for appellants.

*David R. Hallowell*; and *Douglas W. Ahrens* of *Maltman Weber Reed North & Ahrens*, for respondent.

ELLINGTON, J. — This case requires us to decide what protections apply to a bicyclist using a crosswalk. The user of a crosswalk ordinarily has the right-of-way. We hold that the fact Richard Pudmaroff was on a bicycle rather than on foot does not deprive him of the right of way.

## Facts

Richard Pudmaroff was bicycling south on the interurban bicycle trail in Kent, Washington. The trail intersects 277th Avenue at a marked crosswalk, for which approaching motorists are required to yield by a crosswalk yield sign. Users of the trail approaching the crosswalk encounter a stop sign.

When Pudmaroff arrived at the intersection, he stopped and waited for traffic. A car in the westbound lane, the lane closest to Pudmaroff, stopped and waited for him to cross. In the eastbound lane, he saw a vehicle that was "a good distance away," so he mounted his bike and started to cross. Before he reached the other side, he heard the screeching of brakes and was struck by Leona Allen's vehicle.

Allen testified that as she approached the crosswalk in the eastbound lane, she was slowing down for railroad tracks on the other side of the crosswalk. Her vision of Plaintiff was obscured by a westbound vehicle.

The trial court granted Pudmaroff summary judgment

on liability, ruling that Allen was negligent as a matter of law and that there was no evidence Pudmaroff was comparatively negligent. The parties then litigated damages.

## Crosswalk Protection

In *Crawford v Miller*,[1] this court held that bicyclists traveling in crosswalks were entitled to the same protections bestowed upon pedestrians. Pointing out that the Legislature has since revised the definition of pedestrian to exclude bicyclists,[2] and has revised the definition of vehicle to include bicycles,[3] Allen asks us to abandon the *Crawford* rule and hold that she had no duty to Pudmaroff arising from his presence in the marked crosswalk.

*Crawford* involved a child riding her bicycle. She dismounted at the curb, and waited for traffic at an intersection. A truck stopped for her, and she pushed her bicycle into the unmarked crosswalk, then began to ride across the intersection. Defendant drove around the stopped truck in the inside lane, striking the child. The court held that although bicyclists riding upon roadways[4] are obligated to adhere to all duties applicable to motor vehicle drivers,[5] a bicyclist in a crosswalk is not in a

---

[1] 18 Wn. App. 151, 566 P.2d 1264 (1977).

[2] *See* RCW 46.04.400.

[3] *See* RCW 46.04.670.

[4] **"Roadway.** 'Roadway' means that portion of a highway improved, designed, or ordinarily used for vehicular travel, exclusive of the sidewalk or shoulder even though such sidewalk or shoulder is used by persons riding bicycles. In the event a highway includes two or more separated roadways, the term "roadway" shall refer to any such roadway separately but shall not refer to all such roadways collectively." RCW 46.04.500.

[5] **"Traffic laws apply to persons riding bicycles.** Every person riding a bicycle upon a roadway shall be granted all of the rights and shall be subject to all of the duties applicable to the driver of a vehicle by this chapter, except as to special regulations in RCW 46.61.750 through 46.61.780 and except as to those provisions of this chapter which by their nature can have no application." RCW 46.61.755.

"roadway."[6] Since a crosswalk was, and still is, defined as a "portion of the roadway,"[7] the *Crawford* court's holding reflects an implicit determination that a crosswalk is not a roadway for purposes of RCW 46.61.755, which requires bicyclists on a roadway to observe the rules for vehicles. Instead, the *Crawford* court found that whether the crosswalk user was on a bicycle was relevant only as to whether the bicyclist exhibited "ordinary care for her own safety."[8] The court held that the child was entitled to the protections afforded a pedestrian:

> [The automobile driver] was governed by RCW 46.61.235(4), which reads: "Whenever any vehicle is stopped at a marked crosswalk or at any unmarked crosswalk at an intersection to permit a pedestrian to cross the roadway, the driver of any other vehicle approaching from the rear shall not overtake and pass such stopped vehicle."[9]

When *Crawford* was decided, "pedestrian" was defined simply to mean "any person afoot."[10] Approximately 13 years later, the definition of "pedestrian" was expanded to include individuals using wheelchairs or human-powered conveyances *other than bicycles*."[11] Also, when *Crawford* was decided, "roadway" was (and still is) defined as "for vehicular travel."[12] "Vehicle" was then defined to exclude

---

[6]*Crawford*, 18 Wn. App. at 153; RCW 46.04.500.

[7]RCW 46.04.160.

[8]*Crawford*, 18 Wn. App. at 153.

[9]*Crawford*, 18 Wn. App. at 153.

[10]RCW 46.04.400 (1976).

[11]RCW 46.04.400 (emphasis added). "Pedestrian" is currently defined as "any person who is afoot or who is using a wheelchair or a means of conveyance propelled by human power other than a bicycle."

[12]RCW 46.04.500.

bicycles. In 1991, the vehicle definition was amended to include bicycles.[13]

The question then is whether the Legislature's amendment of these two definitions indicates the Legislature intended to change the *Crawford* rule, and treat a bicyclist in a crosswalk the same as a bicyclist on any other portion of the roadway—that is, entitled to none of the usual protections of the crosswalk.

■ ■ The Legislature is presumed to be familiar with judicial interpretations of statutes. Unless there is an indication the Legislature intended to overrule a particular interpretation, amendments are presumed to be consistent with previous interpretations.[14] We must construe the statute in a manner that avoids absurd results.[15]

We first note that the Legislature made no change to the principal statute construed in *Crawford*, RCW 46.61.755. We note also that the expansion of the definition of pedestrians to include human-powered conveyances "other than bicycles" does not indicate a legislative intent to change the law as to bicycles; bicyclists were not within the definition of pedestrian before the amendment. Nor does amendment of the "vehicle" definition to include bicycles change the rights and duties of bicyclists. Since 1965, RCW 46.61.755 has subjected bicyclists using a roadway to the rights and duties of vehicle drivers. But bicyclists are widely permitted to travel on sidewalks,[16] and presumably must use crosswalks at intersections. Obviously here, the marked crosswalk was intended for users of the bike trail. The rules of the road cannot logically apply in crosswalks, nor

[13]RCW 46.04.670.

[14]*See, e.g., In re Williams*, 115 Wn.2d 202, 208, 796 P.2d 421 (1990).

[15]*Duke v. Boyd*, 133 Wn.2d 80, 87, 942 P.2d 351 (1997).

[16]*See, e.g.,* former RCW 46.90.555. (Ch. 46.90 RCW was the Model Traffic Ordinance promulgated by the Legislature in 1975 and was on the books in 1990 when the definitions at issue here were amended. It has since been abrogated in favor of a model to be promulgated by the Department of Licensing (DOL). *See* RCW 46.90.005; Laws of 1993, ch. 400. The analogous DOL regulation is identical to the former statute. *See* WAC 308-330-555.)

does it make sense to permit use of a crosswalk by bicyclists and yet require them to yield to motorists as if in a vehicle.

Indeed, the intent of the amendments appears to be to increase protection of certain crosswalk users not previously defined as pedestrians because they were not "afoot."[17] There is nothing in the legislative history implicating the arguments raised here. The amendments do not confront the *Crawford* issue: When a bicyclist is lawfully in a crosswalk, what is the duty of the motorist?

Our case law evidences the strong level of protection afforded to those traveling in a marked crosswalk. For example, in *Shasky v. Burden*,[18] the protection was described as "exceedingly strong." The rationale for this is simple. Those traveling in a crosswalk rely on their favored status to cross safely.

Common sense dictates that bicyclists be included in those protections. Otherwise, a driver's duty to yield to those in a crosswalk would depend on the type of crosswalk user, resulting in dangerous confusion for motorists and crosswalk users alike. For example, with the amendment of the statute, the Legislature broadened the definition of pedestrian to include those using skateboards, skates, and wheelchairs as a means of transportation. Thus, in a situation where a bicyclist, a skateboarder, a skater, and a person afoot were using the crosswalk, a motorist would be obligated to yield to the skateboarder, the skater and the walker, but not the bicyclist. The skateboarder, the skater, and the bicyclist are similar in that all are capable of moving quickly and pose a similar danger of suddenly darting into traffic. Such conduct would violate any crosswalk user's duty to exercise proper caution, and we see no principled basis for distinguishing between bicyclists and

---

[17]The bill report of the Senate bill containing the amendment to the pedestrian definition recites: "The definition of pedestrian is expanded to include wheelchairs or any means of conveyance propelled by human power other than a bicycle." S.B. 6303, FINAL 1990 LEGISLATIVE REPORT, 51st WASHINGTON STATE LEGISLATURE 148.

[18]78 Wn.2d 193, 199, 470 P.2d 544 (1970).

those statutorily defined as pedestrians in the degree to which they are afforded the protection of the crosswalk. Indeed, we believe the similarities far outweigh any differences.

We see no indication that the Legislature intended to overrule *Crawford*. The 1990 amendments were not directed at the *Crawford* issue. While the bicyclist has a somewhat anomalous place in the legislative scheme, we cannot conclude the Legislature intended to deprive him of the crosswalk protections afforded a skateboarder, nor can we conclude the Legislature intended a driver to discern the means of conveyance used in a crosswalk before appreciating his or her obligations. The *Crawford* rule remains consistent with the legislative framework, with public safety, and with common sense. Absent explicit statutory direction to the contrary, we adhere to the *Crawford* rule.

Allen claims, however, that because the bike path had a stop sign where the path entered the crosswalk, motorists had the right-of-way over users of the bike path. For this proposition she cites RCW 46.61.750(2), and RCW 46.61.755, which together subject bicyclists using a bike path to all the rights and duties of a driver on a roadway. Because drivers must stop and yield when faced with a stop sign at an intersection of two roadways,[19] Allen argues Pudmaroff was obligated to stop at the bike path stop sign and yield to her.

Allen's argument ignores several salient facts. First, yield signs facing Ms. Allen's direction of travel required motorists to yield as they approached the crosswalk. Second, the stop sign at the bike trail does not control an intersection of two roadways. Third, there is no dispute that Pudmaroff obeyed the stop sign. Like the pedestrian definition and the vehicle definition, the bike path statute does not answer the question posed here: whether being astride a bicycle deprived Pudmaroff of the protections of the crosswalk.

---

[19]RCW 46.61.190(2).

We hold that a crosswalk user on a bicycle is entitled to the same protections—and has the same duties—as a crosswalk user on a skateboard, on foot, in a wheelchair: once such a crosswalk user safely enters a crosswalk, he or she has the right-of-way over approaching motorists. Users of crosswalks must exercise due care and caution for their own safety and may not suddenly dart in front of traffic— a crosswalk is not a sanctuary. But once the person on a bicycle is properly in the crosswalk, the motorist's duty should be no different toward the bicyclist than toward the person on foot: a continuous duty of observation, and a duty to yield to the user of the crosswalk.

Affirmed.

The remainder of this opinion has no precedential value, and will not be published. It will be filed for the public record in accordance with RCW 2.06.040.

COLEMAN and BECKER, JJ., concur.

Reconsideration denied March 18, 1998.

Review granted at 136 Wn.2d 1013 (1998).